# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| DEWAYNE LETNER,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   No. 3:06-CV-443<br>) |
| CITY OF OLIVER SPRINGS,<br>    Defendant. | )   Judge Phillips<br>) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an action brought under the Fair Labor Standards Act (FLSA) by plaintiff, Dewayne Letner, for compensation for off-duty care and training of his police dog while he was employed as a canine officer by the City of Oliver Springs. The court tried this civil action without a jury commencing on August 23, 2007. Following the trial, the plaintiff filed proposed findings of fact and conclusions of law. Defendant failed to file proposed findings of fact and conclusions of law despite being provided an opportunity to do so. Having heard the testimony at trial, having reviewed the exhibits introduced into evidence, and having considered the plaintiff's proposed findings and conclusions, the following are the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## Findings of Fact

1.    Dewayne Letner worked as a police officer for the City of Oliver Springs from May 2003 through October 2006.

2. The duties of Officer Letner involved the use of a narcotics detection dog from November 2003 through October 2006.

3. The narcotics detection dog lived with Officer Letner.

4. The City of Oliver Springs did not pay Officer Letner additional wages for off-duty care of his police dog during the period from November 2003 through October 2006.

5. The City did pay Officer Letner for his full shift of work and for any overtime indicated on the time sheets prepared by Officer Letner.

6. During the period from November 2003 through October 2006, the City of Oliver Springs established a work schedule for its police officers of 160 hours in a 28-day work period, for an average work week of 40 hours per week.

7. Officer Letner was usually scheduled to work on-duty 76 hours in one 2-week period, following by 84 hours in the second 2-week period.

8. During the period from November 1, 2003 through January 31, 2005, Officer Letner's regular rate of pay was $12.71 per hour. His overtime rate of pay was $19.07 per hour.

9. During the period from February 1, 2005 through May 22, 2005, Officer Letner's regular rate of pay was $12.96 per hour. His overtime rate of pay was $19.44 per hour.

10. During the period from May 23, 2005 through July 2, 2006, Officer Letner's regular rate of pay was $13.35 per hour. His overtime rate of pay was $20.02 per hour.

11. During the period from July 3, 2006 through October 22, 2006, Officer Letner's regular rate of pay was $13.90 per hour. His overtime rate of pay was $20.85 per hour.

12. Prior to Officer Letner's employment with the City of Oliver Springs, the City employed Floyd Long and Dwayne Bales as canine officers.

13. For the period of time prior to July 2001, the City of Oliver Springs did not compensate Officers Bales and Long for their off-duty care and training of their narcotics detection dogs.

14. Officers Bales and Long sued the City of Oliver Springs for violation of the Fair Labor Standards Act to obtain compensation for the off-duty care and training of their narcotics detection dogs.

15. For the period from approximately July 2001 through 2002, the City of Oliver Springs compensated Officers Bales and Long for their off-duty care and training of their narcotics detection dogs by giving those officers time off with pay equal to one hour per day, seven days per week.

16. The City compensated Officers Dwayne Bales and Floyd Long for their off-duty care of the police dogs by paying these officers for 33 hours of reported on-duty work per week, and paying them for seven hours per week for "K-9 care and maintenance."

17. Police Chief Kenneth Morgan is the City representative who made the decision to provide that compensation to Officers Bales and Long.

18. On August 20, 2003, a judgment was entered in favor of Dwayne Bales and Floyd Long and against the City of Oliver Springs for violation of the Fair Labor Standards Act.

19. This judgment was entered approximately three months before the City of Oliver Springs began using Officer Letner's dog, Prynia, as a narcotics detection dog for the City of Oliver Springs Police Department.

20. The City of Oliver Springs stopped using the narcotics detection dogs of Officers Bales and Long before Officer Letner began working for the City.

21. Beginning in November 2003, Officer Letner's job duties as a police officer for the City of Oliver Springs included the daily training, care and handling of Prynia, the narcotics detection dog he owned.

22. Officer Letner reported to work for each shift with Prynia and spent his entire shift working with Prynia.

23. At the end of each shift, Officer Letner returned home with Prynia, and Prynia lived at Officer Letner's house.

24. Officer Letner spent time outside of his normally scheduled shift in connection with the care of Prynia, including the feeding, watering, grooming, bathing, exercising, cleaning up after, transporting, training and "bonding" with Prynia.

25. Officer Letner testified that he spent an average of one (1) hour per day, seven days per week, in these activities.

26. Prynia was responsible for at least fifty arrests by the City of Oliver Springs Police Department.

27. Several months after the City of Oliver Springs began using Officer Letner's dog Prynia as a narcotics detection dog, the City also began using Smokey, another narcotics detection dog, for whom Officer Bradley Aytes was the canine handler.

28. Police Chief Kenneth Morgan was the City representative who decided how compensation for the off-duty care and maintenance of the narcotics detection dogs of Officers Letner and Aytes would be handled.

29. There was a discussion between Officer Letner, Officer Aytes, and Chief Morgan in the summer of 2004, about the time that Officer Aytes became the canine officer handling Smokey, regarding whether the City would compensate Officer Letner and Officer Aytes for their off-duty care and training of their narcotics detection dogs.

30. Officer Letner and Officer Aytes asked Chief Morgan if they could be compensated for the off-duty care of the dogs, and they specifically suggested that such compensation could start by allowing them to take paid time off during the four-hour shift that they were scheduled to work at least once a month.

31. Chief Morgan told them that the canine officers could not have any kind of "comp time," because if the City Council found out about it, the City Council would do away with the dogs.

32. Officer Letner understood from this conversation with Chief Morgan that the City would not compensate him for the off-duty care and training of his dog.

33. Officer Letner had no other discussions with Chief Morgan about receiving compensation for the off-duty care and training of Prynia.

34. Officer Letner never took paid time off as compensation for the off-duty care and training of Prynia.

35. There is no evidence that Officer Letner received any paid time off as compensation for the off-duty care of Prynia.

36. Officer Letner's time clock records show that Officer Letner clocked in, worked a twelve-hour shift, and then clocked out at the end of the twelve hours.

37. No records were produced by the City of Oliver Springs reflecting any compensation, whether in paid time off or money given to Officer Letner for his off-duty care and training of his narcotics detection dog.

38. The 2001-2002 time clock records for Officer Floyd Long show a notation of seven hours for each one week period and fourteen hours for each two-week period for "K-9 C&M" (canine care and maintenance). The same "K-9 C&M" notation appears on the 2001-2002 time clock records for Officer Dwayne Bales. Chief Morgan wrote the "K-9 C&M" notation and the hours of such compensation on each time card and signed each time card for former canine officers Bales and Long. Although Chief Morgan also signed each of Officer Letner's time cards, he never made any notation of any time off or compensation for canine care and maintenance on Officer Letner's time cards.

39. In each pay period, Officer Letner's hours reported on his time records equaled or exceeded the 76 or 84 hours he was regularly scheduled to work in a two-week period. Accordingly, the court finds that all wages for off-duty dog care are owed to Officer Letner at his overtime rates of pay.

40. Officer Letner's time records show that the Police Department approved Officer Letner's requests for overtime pay for hours that were in excess of his 76 or 84 scheduled work hours.

41. Based on the evidence presented, it appears that the parties are in agreement that compensation of one hour per day, seven days a week, is a reasonable

amount of compensation for the off-duty care and handling of narcotics detection dogs by the City of Oliver Spring's canine officers.

42. Attachment "A" to plaintiff's Proposed Findings of Fact and Conclusions of Law shows that there were 444 hours of off-duty dog care from the pay period ending November 23, 2003 through the pay period ending January 30, 2005. At Officer Letner's overtime rate of $19.07 per hour at that time, the total owed for that period is $8,467.08.

43. Attachment "A" shows that there were 112 hours of off-duty dog care from the pay period ending February 13, 2005 through the pay period ending May 22, 2005. At Officer Letner's overtime rate of $19.44 per hour at that time, the total owed for that period is $2,177.28.

44. Attachment "A" shows that there were 406 hours of off-duty dog care from the pay period ending June 5, 2006 through the pay period ending July 2, 2006. At Officer Letner's overtime rate of $20.02 per hour at that time, the total owed for that period is $8,128.12.

45. Attachment "A" shows that there were 112 hours of off-duty dog care from the pay period ending July 16, 2006 through the pay period ending October 22, 2006. At Officer Letner's overtime rate of $20.85 per hour at that time, the total owed for that period is $2,335.20. The total amount of back wages owed to Officer Letner for off-duty dog care is $21,107.68.

46. After a judgment was entered against the City of Oliver Springs in the action filed by former canine officers Bales and Long, the City and Chief Morgan were

aware of the requirement to compensate officers for their off-duty care and training of their narcotics detection dogs.

47. The preponderance of the evidence shows that the City made no effort to adopt a written policy for compensation of canine officers, to document any compensation to canine officers, or to institute any system for compensation of canine officers during Officer Letner's employment.

48. The evidence demonstrates that the City, through its representative, Chief Morgan, refused to compensate Officer Letner for his off-duty care and training of Prynia.

49. Based on these facts, the court finds that the City's refusal to compensate Officer Letner for his off-duty care and training of Prynia was in bad faith, in an effort to obtain the services of a narcotics detection dog and handler without paying the additional salary costs.

**Conclusions of Law**

50. In 1985, the Supreme Court expressly held that the overtime pay provisions of the FLSA were applicable to state and local governmental employers. *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528 (1985). Since 1985, the federal courts repeatedly have held that the requirements of the FLSA are applicable to county and city employers of law enforcement officers. *See Cistensen v. Harris County*, 529 U.S. 576 (2000); *Brock v. City of Cincinnati,* 236 F.3d 793 (6th Cir. 2001).

51. The overtime provisions of the FLSA state: "Except as otherwise provided in this Section, no employer shall employ any of his employees . . . for a work

week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).

52. Work performed off-duty qualifies as "work" and entitles an employee to compensation under the FLSA because employees must be compensated for "activities performed either before or after their regular work shift . . . if those activities are an integral and indispensable part of the principal activities for which the covered employees are employed."  *Steiner v. Mitchell,* 350 U.S. 247, 256 (1956).

53. The regulations of the United States Department of Labor expressly provide "work not requested but suffered or permitted is work time."  29 C.F.R. § 785.11. With respect to work performed away from the premises or job site, the Department of Labor regulations state: "If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked."  29 C.F.R. § 785.12.

54. Courts that have addressed whether law enforcement officers should be compensated for off-duty care and training of their police dogs have concluded that such activities are "work" that is an integral part of the canine officer's duties, which benefits the employer; therefore, the officers are entitled to compensation.  *See Karr v. City of Beaumont, Texas,* 950 F.Supp. 1317 (E.D.Tex. 1997); *Levering v. District of Columbia,* 869 F.Supp. 24 (D.D.C. 1994); *Nichols v. City of Chicago,* 789 F.Supp. 1438 (N.D.Ill. 1992); *Truslow v. Spotsylvania County Sheriff*, 783 F.Supp. 274 (E.D.Va. 1992); *Albanese v. Bergen County,* 991 F.Supp. 410 (D.N.J. 1998); *Andrews v. Dubois,* 888 F.Supp. 213 (D.Mass. 1995); *Hellmers v. Town of Vestal,* 969 F.Supp. 837 (N.D.N.Y. 1997); *Baker v.*

*Stone Company,* 41 F.Supp.2d 965 (W.D.Mo. 1999); *Brock v. City of Cincinnati*, 236 F.3d 793 (6th Cir. 2001); *Reich v. New York City Transit Authority,* 45 F.3d 646 (2nd Cir. 1995).

55. Federal courts also have required the payment of compensation for off-duty care of police dogs owned by the officer, but used by the City for law enforcement purposes. *See Mayhew v. Wells,* 125 F.3d 216 (4th Cir. 1997); *Thomas v. City of Hudson,* 1996 U.S. Dist. LEXIS 7244 (N.D.N.Y. 1996).

56. Accordingly, the law is well-established that law enforcement canine officers like plaintiff are entitled to compensation for their off-duty time spent feeding, bathing, exercising, training, cleaning up after, and otherwise caring for their police dogs, because such activities benefit their employer and are compensable as "work" under the FLSA.

57. The City takes the position that because Officer Letner did not request overtime compensation for his off-duty care and training of Prynia at the time he performed that work, he cannot recover for that work. However, an employee's right to be paid overtime compensation in accordance with the FLSA, and to pursue claims for damages allowable by the Act are statutory rights which affect the public interest and, hence, rights which may not be waived by an employee. An employee does not waive his claim for overtime compensation by failing to request overtime compensation at the time the work is performed. *See Burry v. Nat'l Trailer Convoy, Inc.,* 338 F.2d 422 (6th Cir. 1964); *Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943 (2nd Cir. 1959); *George Lawley & Son Corp. v. South,* 140 F.2d 439 (1st Cir. 1944); *De Pasquale v. Williams-Bauer Corp.,* 151 F.2d 578 (2nd Cir. 1945); *Freeman v. Blake Co.,* 84 F.Supp. 700 (D.Mass. 1949); *handler v. Thrasher,* 191 f.2d 120 (10th Cir. 1951); *Lewis v. Nailling,* 36 f.Supp. 187 (W.D.Tenn. 1940); *Travis*

*v. Ray,* 41 F.Supp. 6 (D.Ky. 1941); *Sauls v. Martin,* 45 f.supp. 801 (D.S.C. 1942); *Ballard v. Consolidated Steel Corp.,* 61 F.Supp. 996 (D.Cal. 1945). Further, "acceptance by an employee of payments of regular and overtime wages will not stop him from suing to recover the amount due him when he proves he actually worked longer." *Robertson v. Alaska Juneau Gold Mining Co.,* 157 F.2d 876, 879 (9th Cir. 1946).

58. The evidence in this case demonstrates that Officer Letner was told not only that he could not receive compensation for the off-duty care and training of his narcotics detection dog, but also that he needed to keep quiet about the issue or the City Council would get rid of the dogs. Thus, his failure to contemporaneously request overtime for his off-duty care and training of Prynia does not preclude his claim for back wages in this action.

59. The City argued that it agreed to allow Officer Letner to take time off from his regular shift in order to compensate him for his off-duty care and training of his dog, and that if he failed to actually take the time off, then the City has no obligation to compensate him for his off-duty work with the dog.

60. All time that an employer "suffers or permits" its employee to work must be compensated, and the employer and employee may not make agreements to pay and receive less pay than the FLSA requires, because such agreements are against public policy and unenforceable. *See Rudolph v. Metropolitan Airports Comm.,* 103 F.3d 677 (8th Cir. 1996). Thus, the City's alleged agreement with Officer Letner to "take time off" as compensation for the off-duty care of Prynia is not a defense to Officer Letner's FLSA claim.

61. Under the FLSA, an award of liquidated damages is mandatory, but may become discretionary if the employer can establish both that the act or omission giving rise to the violation was in good faith and that the employer had reasonable grounds for believing that its act or omission was not in violation of the FLSA. *Troutt v. Stavola Bros.,* 905 F.supp. 295, 302 (M.D.N.C. 1995); *see also, Dole v. Elliott Travel and Tours, Inc.,* 942 F.2d 962 (6th Cir. 1991).

62. An employer's ignorance of the requirements of the FLSA is insufficient to establish good faith. *Williams v. Tri-County Growers, Inc.,* 747 F.2d 121, 129 (3rd Cir. 1984); *Martin v. Cooper Electric Supply Co.,* 940 f.2d 896, 907 (3rd Cir. 1991). In this action, the City cannot claim ignorance of the requirements of the FLSA, because it already had been through a jury trial on exactly the same issues with former canine officers Bales and Long.

63. The City of Oliver Springs failed to show that it acted in good faith or that it denied compensation for the off-duty care and training of Officer Letner's narcotics detection dog under a reasonable belief that its actions complied with the FLSA. The evidence shows the contrary – that with full knowledge of the requirements of the FLSA, the City disregarded its legal obligations; therefore, liquidated damages equal to the amount of wages owed to Officer Letner are mandated by the Act.

64. The FLSA further provides that in any action by an employee against his employer for recovery of overtime compensation, "the court in such action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(d). Accordingly, the court finds that Officer Letner is entitled to a judgment in this action and to recovery of his

reasonable attorney's fees. Officer Letner shall submit counsel's statement of fees and costs with supporting documentation within thirty (30) days following entry of the judgment.

## **Conclusion**

Based upon these findings of fact and conclusions of law, the court will enter judgment in favor of Officer Letner and against the City of Oliver Springs in the amount of $21,107.68 for back wages owed, plus $21,107.68 in liquidated damages, and for reasonable attorney's fees and costs incurred by Officer Letner, the amount to be determined by further orders of the court.

In addition, on July 20, 2007, Magistrate Judge Guyton entered an order in this action, granting Officer Letner's motion for sanctions for the City's failure to comply with discovery requests [Doc. 27]. Officer Letner's motion for enforcement of the magistrate judge's order [Doc. 37] is **GRANTED**, whereby the amount of $1,000.00 will be added to the judgment awarded in this case.

An order consistent with these findings of fact and conclusions of law will be entered.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge